# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAIAH WALKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 2:22-cv-03154 |
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, | : | |
| | : | |
| | : | |
| Defendant. | | |

## DEFENDANT SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY'S FINAL PRETRIAL MEMORANDUM

Pursuant to the Court's August 17, 2023 Order, Local Rule of Civil Procedure 16.1(c), and this Court's policies and procedures, Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA" or "Defendant"), by and through its undersigned counsel, respectfully submits its Pretrial Memorandum.

### I. FACTUAL SUMMARY OF THE CASE[1]

Plaintiff Isaiah Walker ("Plaintiff") is a former SEPTA bus operator whose employment was terminated based on his repeated violation of SEPTA's no-fault attendance policy. Plaintiff now alleges that his termination was improperly based on his alleged disability, FMLA leave, or leave requests, and that SEPTA failed to accommodate his disability. Contrary to the allegations, Plaintiff did not request an accommodation or inform SEPTA that his alleged disability impacted his ability to perform the essential functions of his job, and Plaintiff has produced no evidence to support a retaliation claim. Rather, Plaintiff was terminated based on the attendance policy

---

[1] SEPTA incorporates by reference its detailed Statement of Material Facts set forth in its pending Motion for Summary Judgement (Dkt. No. 27).

1

negotiated by SEPTA and the Transport Workers Union of Philadelphia, Local 234 CTD ("TWU 234"), pursuant to which Plaintiff had been progressively disciplined for reaching twenty attendance points on at least four prior occasions, Plaintiff received warnings prior to each disciplinary action, and Plaintiff signed a "Work Resumption Agreement" (negotiated by his union) shortly before his termination, which confirmed that his employment would be terminated next time he reached twenty attendance points.

### A. SEPTA's Policies

SEPTA has an Equal Employment Opportunity & Affirmative Action and a Harassment Prevention and Retaliation Policy as part of its efforts to maintain a workplace free of discrimination and harassment including that based on protected class membership. Plaintiff signed an acknowledgement on March 26, 2018 confirming that he participated in an informational session on SEPTA policies and workplace behavior and was issued copies of the above policies. SEPTA also has an ADA Reasonable Accommodation Policy. Under that policy, **"[i]t is the responsibility of a Qualified Individual with a Disability to identify and request an accommodation** which would render him/her capable of performing the essential functions of the position desired or held." SEPTA makes clear in its policy that "SEPTA cannot consider accommodation for an individual's medical condition of which it has no knowledge. Similarly, SEPTA will not anticipate or presume that an individual has a Disability."

### B. The Attendance Policy Covering TWU 234 Employees.

SEPTA abides by the Attendance Policy and Attendance Point System contained in its collective bargaining agreement with TWU 234 (the "CBA"). Under the Attendance Points System, points are assessed for various incidents of non-attendance as proscribed by the Agreement, which vary in number of points depending on the severity and type of non-attendance. An employee is subject to progressive discipline each time he reaches twenty. The

first time an employee reaches twenty points, he receives a one-day suspension, and his point total is reduced by ten points. The second time an employee reaches twenty points, he receives a five-day suspension, and his point total is again reduced by ten points. On the third instance, the employee is discharged. However, SEPTA and the union frequently negotiate a "last chance" – a *Work Resumption Agreement* , pursuant to which the employee's point total is reduced by ten points, and the employee agrees that, if the Attendance Points reach twenty once more, the employee's employment will be terminated. In this circumstance, an employee must obtain twenty attendance points four separate times to be discharged.

In addition to the point reduction following discipline, SEPTA employees are given ample opportunity to reduce any accumulated attendance points and avoid further discipline and discharge. For every month in which an employee receives no points, the employee's point total will be reduced by two points. Beginning with the sixth consecutive month without accruing points, and for each month thereafter, the employee's point total will be reduced by three points.

SEPTA's Attendance Point System is a no-fault system, meaning that once an employee gets to twenty points they are disciplined, regardless of the reason for the attendance infraction. Employees do not, however, accrue points for absences covered by the FMLA.

### C. **Plaintiff Reports "No Limitations" When Hired as a Bus Operator.**

SEPTA hired Plaintiff on March 26, 2018, as a Bus Operator. Prior to Plaintiff beginning employment with SEPTA, SEPTA conducted a Medical Fitness Determination, which is a standard practice for new Bus Operators. In this Medical Fitness Determination, Plaintiff was asked about any ailments he may have and any limitations, to which Plaintiff wrote in part, "I have Sickle Cell Anemia since birth and I've had a retinal detachment, **No limitations**…" Plaintiff also testified that he did not tell the examining doctor that he might have issues reporting to work based on Sickle Cell Anemia.

Plaintiff was also asked in his STOP-BANG Questionnaire, another medical questionnaire asked of new bus operators, if he often feels tired, fatigued, or sleepy during daytime to which he replied, "**NO**". Plaintiff testified that, "I flew through these questions," and "part of it was for me not to have any … to put anything on it that would prevent me from getting the job at the time." Plaintiff further admitted that if he was honest at the time, he would have answered "Yes", that he feels tired during the day and also "Yes" that he snores. During Plaintiff's employment, SEPTA had no reason to know or believe that Plaintiff had any limitations due to his sickle cell anemia, and Plaintiff never requested an accommodation or advised any of his supervisors of any alleged limitations.

### D. **Plaintiff's Accumulation of Attendance Disciplinary Points.**

Plaintiff was represented by TWU 234 and, therefore, was subject to the Attendance Policy in the CBA. SEPTA employees earn sick leave but accrue points for calling out sick. While employees accrue points for calling out sick, an employee is not expected to return to work until he/she has recovered.[2]

As a bus operator, Plaintiff had regular opportunities to request alternate work assignments, including earlier or later start times. Plaintiff testified that he did not attempt to change his schedule.

#### 1. *Plaintiff's Substandard Attendance is Overwhelmingly Attributable to his Inability to Secure Childcare.*

SEPTA keeps records of its employees' attendance. The attendance history reports contain a brief note summarizing what an employee reported to the SEPTA dispatcher each time there was an attendance issue as well as other recordkeeping information like the date, point

---

[2] Employees may also use "Emergency at Home" ("EAH") absences, for which they do not accrue attendance points.

code, and any assessed points. Plaintiff's Points History Report shows twenty-three call-outs for "childcare" or "no babysitter" between 2018 and 2021. When asked about these call outs, Plaintiff testified that, while he was working at SEPTA from 2018 to 2021, his daughter was in daycare. Plaintiff further testified that he would call out "[p]retty often" and say he did not have childcare or a babysitter, but his real reason for calling out, <u>which he did not report</u>, was for being exhausted, tired, and maybe in pain. Based on Plaintiff's statements to SEPTA dispatchers, at least 88% of Plaintiff's call-outs during his employment were <u>unrelated to sickle cell</u>. Plaintiff only called out for "Sickle Cell" on four occasions between 2018 and 2021.[3] Plaintiff received two points for each of these call outs, and one of these call-outs was reversed on April 19, 2021. Therefore, Plaintiff's call-outs for "Sickle Cell" accounted for only six of the minimum fifty Attendance Points necessary for discharge.

Plaintiff testified that he informed a supervisor in passing that he had sickle cell, but he never informed his supervisors that his disability affected his ability to perform his job or needed an accommodation:

> Q. Okay. Did you tell the [SEPTA] doctor that you might have issues reporting to work based on sickle cell anemia?
>
> A. No.
>
> Q. Did you tell anybody that?
>
> A. No. Like I said, I didn't know what we were doing, what the job consisted of. This was before we even started training.
>
> Q. Okay. Did you ever tell Duckett or Lock or Bankston that your medical condition made it difficult for you to report to work?
>
> A. At times, yes.

---

[3] After accruing twenty points for the call-out on June 7, 2021 – which required his termination based on the policy and Work Resumption Agreement, Plaintiff called out for "Sickle Cell" on June 8, 2021.

Q. How did you explain that to them?

A. Just telling them like if I know I'm late or I know I called out, they might even pull me to the side at times. And I'll tell them, listen, I'm -- you know, I'm just struggling getting up or being exhausted from the day before, you know. As far as being in pain, not so much, 'cause I didn't want them -- I didn't want them to be like, well, you need to take some time off or things like that. I had a daughter to provide for, so --

Q. So you didn't tell them that you were in pain because you didn't want to have to take time off?

A. Yeah.

SEPTA's 30(b)(6) witness, Jeffrey Bankston, also confirmed that Plaintiff did not inform Bankston or any other supervisor that Sickle Cell disease caused any limitation on his ability to perform his job, he never asked for a reasonable accommodation, and he never reported that he could not work due to his medical condition. Merely informing a supervisor that one has an illness that could potentially constitute a disability under the ADA is not sufficient to confer ADA protections or warrant an accommodation.

### 2. *Plaintiff Routinely Exhausted his Allotted Emergency at Home.*

SEPTA employees hired prior to November 15, 2021, like Plaintiff, are entitled to use a total of three emergency at home ("EAH") days within any consecutive twelve-month period. These EAH days require no validation and do not incur any Attendance Points, but an employee is expected to return to work the following day. After an employee exhausts his EAH days, all subsequent call-outs are assessed points and are considered in establishing call-out patterns. From 2018 to 2020, Plaintiff exhausted his EAH days for days on which he reported "no babysitter" or "childcare."

### 3. *Plaintiff was Repeatedly Disciplined Under the Attendance Point System.*

Plaintiff was aware of the attendance policy and his point accrual, but he was unable to keep his attendance points below the twenty-point disciplinary threshold. Plaintiff hit twenty-two points and received a one-day suspension on July 31, 2019.[4] Plaintiff hit twenty-five points and received a five-day suspension on October 1, 2019. Plaintiff again hit twenty-two points and was discharged with dignity on January 16, 2020. Plaintiff then signed his Work Resumption Agreement on February 18, 2020. Pursuant to the Work Resumption Agreement, the next time Plaintiff reached twenty-points or more would result in termination.

### 4. *Plaintiff Called Out on June 7, 2021 for "No Babysitter," Accruing Twenty Points and Resulting in His Termination.*

Between October 25, 2018 and June 7, 2021, Plaintiff accumulated approximately 76 points: about 27 points for "childcare" or "no babysitter" call outs ranging from February 7, 2019 to June 7, 2021; a weekend call out pattern established on September 28, 2019 and later continued on January 11, 2020; periodic lateness; and a sick absence for "STOMACH" from December 19, 2020 to February 21, 2021.[5] On June 7, 2021, Plaintiff again called out for an EAH day and reported to the SEPTA dispatcher, "NO BABYSITTER". Plaintiff was assessed two points because he no longer had any EAH days available. This took Plaintiff from eighteen to twenty points, resulting in a violation of his Work Resumption Agreement and termination of his employment. The next day, June 8, 2021, Plaintiff called out sick claiming "Sickle Cell." Plaintiff testified that he was in the hospital beginning on June 7, 2021, but he agreed that, when he called out, he informed the dispatcher that he did not have a babysitter.

---

[4] In addition to notices Plaintiff received regarding each level of discipline, Plaintiff received notices warning him of his point total each time he accrued 16 points.

[5] Pursuant to the policy, although Plaintiff was absent for over two months, he accrued only two points for the initial call-out on December 19.

Prior to his termination, Plaintiff never requested any accommodation related to his medical condition. After his termination, his union requested a formal hearing, and Plaintiff acknowledges that he requested an accommodation for the first time in the moments before his formal hearing confirming his employment termination. It is undisputed that, before he incurred the violative number of points warranting termination his termination and being notified that his employment would be terminated, Plaintiff did not request an accommodation. He testified that, *after* being terminated, he asked one of the SEPTA directors for an accommodation, but he did not make a request to the EEO/AA & ER Department, which is responsible for undertaking an evaluation of the request. He also acknowledged that he never made a request to the EEO Department and never completed an ADA Request for Accommodation Form.

### 5. *SEPTA's Hearing Officer Upholds the Termination.*

On June 29, 2021, SEPTA held a Formal Hearing regarding Plaintiff's substandard attendance. During this hearing, the Hearing Officer, Shwana Rogers, considered the evidence presented including Plaintiff's Points History Report, Attendance Deviation Notices, FMLA Approval, Jefferson Health Documentation, Work Resumption (Last Chance) Agreement, and other applicable records. Plaintiff attended the hearing with his union representatives. Upon hearing SEPTA's case and the Union's defense, the Hearing Officer upheld the termination:

> The Hearing Officer has reviewed the attendance infractions of the employee and determined the current point total to be accurate at 20 points. The Authority is sympathetic to the employee's medical condition however, the attendance policy is a no-fault system and allows the employee the opportunity to reduce his points each 30 days. Mr. Walker failed to reduce his attendance points; therefore, the next step of discipline is Discharge.

As a bus operator, Plaintiff had many opportunities to improve his attendance record and could at any time have requested a reasonable accommodation. Similarly, Plaintiff could have chosen alternative schedules that would have allowed him to report to work later. Plaintiff failed to

improve his attendance record and Plaintiff failed to follow the procedures for requesting an accommodation. It is undisputed that Plaintiff was terminated for violating his Work Resumption Agreement via his substandard attendance.

### E. Plaintiff was Allotted all FMLA Leave to Which He Was Entitled.

Contrary to the allegations in the Complaint, Plaintiff testified that he does not believe he was ever denied FMLA leave or that his termination had any relation to any request for FMLA leave:

> Q. While you were employed at SEPTA were you ever denied FMLA leave that you applied for or you believe you were entitled to?
>
> A. No, I didn't.
>
> Q. Why do you believe your employment was terminated at SEPTA?
>
> A. I believe it was terminated due to their point system, due to the fact that I had, you know, the number of, I guess, call-outs, I guess you could say. But, yeah, that's my reason to believe, you know.
>
> Q. Do you believe that your termination was related to any request for FMLA leave?
>
> A. No. I mean, it could have been related to the fact that while being out during leave I was out for long periods of time, but that would just be my opinion.
>
> Q. Okay. Well, when you were out for long periods of time you either got no points or two points, right?
>
> A. Yeah.

SEPTA's FMLA records corroborate Plaintiff's testimony. Plaintiff was granted FMLA leave on multiple occasions. At the expiration of each leave of absence, Plaintiff was provided a letter regarding his return to work. This letter instructed Plaintiff to contact SEPTA's ADA coordinator if he needed an accommodation: "if you believe you have a qualifying disability under The Americans With Disabilities Act and are eligible for a reasonable accommodation,

please contact Scott Wasserkrug" and provided Mr. Wasserkrug's contact information. The letters referred to SEPTA's ADA Reasonable Accommodation policy and instructed Plaintiff on where to access the policy. Plaintiff never contacted Scott Wasserkrug. Plaintiff testified that he received the letters but never read the aforementioned paragraph of the letter and never referred to the ADA Reasonable Accommodation policy.

Regarding Plaintiff's final attendance points, although Plaintiff initiated an FMLA request on June 7, 2021, Plaintiff had already accrued twenty points for the June 7 call-out for "NO BABYSITTER".

### F. **Plaintiff's Proposed Accommodation for his Substandard Attendance would not be Reasonable and Would Create an Undue Hardship.**

In Plaintiff's Complaint, he alleges that, "A slightly flexible schedule that contemplated the hardship of a person who occasionally is too fatigued to wake up right on time for work would have more than allowed Mr. Walker to perform the essential functions of his Job." Even if Plaintiff had requested that accommodation, it would not have been a reasonable request and would have been an undue hardship for SEPTA.

SEPTA bus operators have full discretion in choosing their routes, subject to seniority. At Plaintiff's work location, even newer bus operators had around 80-90 pieces of work available to pick. Once the bus operator's schedule is set, however, the employee is expected to be present when scheduled. Although SEPTA a limited number of operators may be available each day on "report time," because of the scale of SEPTA's operation and the chance of tardiness or absence, SEPTA requires employees to report in time to meet the schedules they have selected. Because of the importance of punctual attendance, SEPTA and the union have negotiated the attendance policy, which assesses points for lateness and call-outs. All operators are treated equally when being given points for tardiness or call-outs.

Plaintiff argues that "regular and predictable on site-attendance" is not an essential function of the job of a bus operator – a job which requires operating a bus route on a fixed schedule with specific times to pick up passengers who are relying on SEPTA to run on-time. Although Plaintiff had flexibility to choose his routes, schedule, and report time, and was unable to abide by the attendance policy and regularly report to work on time. Although Plaintiff never requested an accommodation, his post-termination request for a "flexible schedule" would have been unreasonable, inconsistent with the collective bargaining agreement, and an undue hardship for SEPTA.

## II. THE PARTIES RESPECTIVE CLAIMS AND DEFENSES

### A. Plaintiff's Claims

Plaintiff alleges that SEPTA Violated the Americans with Disabilities Act ("ADA") by failing to accommodate a disability and intentionally discriminating against him based on a disability. Plaintiff's Amended Complaint ¶¶ 33-42. Plaintiff broadly alleges Family and Medical Leave Act ("FMLA") violations, namely interference and retaliation. Plaintiff's Amended Complaint ¶¶ 43-48. Finally, Plaintiff alleges Pennsylvania Human Relations Act violations based on its allegations of ADA Discrimination and FMLA Retaliation. Plaintiff's Amended Complaint ¶¶ 49-55.

### B. SEPTA's Defenses

Plaintiff has not produced any evidence to support his claims, and there are no genuine disputes of material fact that would preclude judgment in SEPTA's favor. The undisputed record confirms that: (1) Plaintiff is not a qualified individual with a disability under the ADA; (2) Plaintiff failed to request an accommodation and failed to demonstrate that any requested accommodation was possible; and (3) Plaintiff acknowledged that SEPTA did not deny him FMLA leave or take any disciplinary action based on his FMLA leave.

1.  *Plaintiff Is Not a Qualified Individual With A Disability Under The ADA.*

At the time of his termination, Plaintiff could not perform the essential functions of his bus operator position with or without an accommodation. SEPTA bus operators are expected to be punctual. It is an essential element of the job that the buses run on time. Although Plaintiff admitted that he was able to select his schedule ("runs") beginning at various times throughout the day, Plaintiff's attendance record demonstrates that he was unable to reliably show up to work on time or at all. Because Plaintiff was unable to meet the attendance requirements – an essential function of the bus operator job –Plaintiff is not a qualified individual with a disability.

2.  *Plaintiff Failed To Request An Accommodation And Failed To Demonstrate That An Accommodation Was Possible.*

Plaintiff failed to request an accommodation during his employment. Despite being repeatedly made aware of how to request an accommodation under SEPTA's policies and procedures, Plaintiff confirmed that his request for an accommodation was made at his post-termination hearing - more than three weeks after his termination. Plaintiff was aware of SEPTA's policies and received additional notice throughout his employment, and specifically following his FMLA leave, that he may seek an accommodation. Pursuant to SEPTA's ADA Reasonable Accommodation Policy, SEPTA had no obligation to impose an accommodation on an employee who: (1) was not requesting an accommodation; and (2) was actively concealing limitations caused by his alleged ailments.

Even if Plaintiff had requested an accommodation, he cannot point to any record evidence that SEPTA could have accommodated him. The Attendance Point System is governed by the Collective Bargaining Agreement that governed Plaintiff's employment. Nonetheless, by failing to request an accommodation (or otherwise put SEPTA on notice that an accommodation was necessary), Plaintiff prevented SEPTA from engaging in the interactive process, considering

any requested accommodation, or considering whether Plaintiff's alleged disability and limitations could be accommodated. Furthermore, Plaintiff's suggested accommodation – a "flexible" schedule – would not have been reasonable and would have been an undue hardship. Accordingly, Plaintiff's failure-to-accommodate claim is without merit.

        **3.** *Plaintiff Was Not Denied FMLA Leave and Therefore Cannot State An FMLA Claim.*

Plaintiff was not denied FMLA. To the contrary, Plaintiff requested and was granted FMLA leave on several occasions, and his requests were only denied when he had exhausted his leave or was otherwise ineligible. In fact, Plaintiff testified that his termination was unrelated to any request for or use of FMLA leave.

To the extent Plaintiff now argues that he was or should have been granted FMLA leave after accruing twenty points, that argument should be rejected. Plaintiff had agreed to the Work Resumption Agreement, which he violated by calling out based on childcare issues. His termination was required by that absence, and Plaintiff's subsequent conduct is irrelevant to the reasons for his termination. Plaintiff has not produced any evidence to support his FMLA retaliation or interference claim.

## III. RELIEF SOUGHT

SEPTA denies that Plaintiff is entitled to any damages in this case. In the Amended Complaint, Plaintiff requests compensatory damages for lost earnings and "earning capacity," pain and suffering, emotional distress, punitive damages, and attorney's fees and costs.

## IV. LIST OF WITNESSES WHO MAY BE CALLED

SEPTA expects to present the following witnesses at trial in this matter:[6]

---

[6] SEPTA reserves the right to call as a witness any witness identified on Plaintiff's witness list, and reserves the right to supplement or amend this list as necessary.

- **Plaintiff Isaiah Walker** – Regarding any allegations contained in the pleadings; any deposition testimony from any of the witnesses; any other testimony from any of the witnesses; any exhibit of record; any information that would support or oppose Plaintiff's allegations of violation of the ADA, violation of FMLA, and violation of PHRA; and any information as to damages.

- **Jeffrey R. Bankston**, SEPTA Director of Transportation, Bus Operations – Regarding Plaintiff's duties and responsibilities as a Bus Operator; Plaintiff's performance, discipline, and attendance; Reason's for Plaintiff's termination; TWU Local 234 Attendance policy and point system; Plaintiff's attendance points history and discipline, and whether any employee reached the same number of attendance points at Plaintiff's work location and was not terminated; and SEPTA's Midvale Depot (operator assignments, "run" selection, and seniority).

- **Richard Duckett**, SEPTA Director of Transportation, Bus Operations – Regarding Plaintiff's duties and responsibilities as a Bus Operator; Plaintiff's performance, discipline, and attendance; Reason's for Plaintiff's termination; TWU Local 234 Attendance policy and point system; Plaintiff's attendance points history and discipline, and whether any employee reached the same number of attendance points at Plaintiff's work location and was not terminated; and SEPTA's Midvale Depot (operator assignments, "run" selection, and seniority).

- **Carol O'Neal,** SEPTA Director of Equal Employment Opportunity, Affirmative Action, and Employee Relations – Regarding SEPTA's policies on discrimination, retaliation, and harassment as applicable to this case, SEPTA's policies and procedures involving accommodation of disabilities and FMLA applications; any discrimination complaint by an employee disciplined or terminated for attendance points at Plaintiff's work location; any internal or external audit of SEPTA's policies regarding discrimination, harassment, or disability accommodation at Plaintiff's work location; training for employees and/or supervisors at Midvale Depot on discrimination, retaliation, and harassment.

## V. PRE-TRIAL EXHIBIT LIST

SEPTA may use the following documents/items as exhibits at trial: [7]

1. SEPTA Equal Employment Opportunity & Affirmative Action Policy (SEPTA-Walker 000770-80)

2. SEPTA Harassment Prevention and Retaliation Policy (SEPTA-Walker 001053-58)

---

[7] SEPTA reserves the right to rely on any exhibit identified on Plaintiff's exhibit list, and reserves the right to supplement or amend this list as necessary.

3. Walker Hiring Materials & Personnel File (SEPTA-Walker 000013-101)

4. SEPTA ADA Reasonable Accommodation Policy (SEPTA-Walker 000559-64)

5. SEPTA ADA Reasonable Accommodation Procedure Manual (SEPTA-Walker 000565-78)

6. Collective Bargaining Agreement between SEPTA and the Transport Workers Union of Philadelphia, Local 234 CTD (SEPTA-Walker 000592-768)

7. 30(b)(6) Deposition of Jeffrey Bankston

8. 30(b)(6) Deposition of Carol O'Neal

9. Deposition of Isaiah Walker

10. SEPTA-Walker Health Records (SEPTA-Walker 000001-12)

11. Isaiah Walker's STOP-BANG Questionnaire (SEPTA-Walker 000009)

12. Walker Formal Hearing (SEPTA-Walker 000534-35)

13. Walker Points History Report (SEPTA-Walker 000590-91)

14. Walker Sick Record (SEPTA-Walker 000545-55)

15. Walker discipline notices and warning letters (SEPTA-Walker 000139, 352-457, 769)

16. Walker Work Resumption Agreement (SEPTA-Walker 000017)

17. Walker FMLA Records (SEPTA-Walker 000583-87)

18. Sick Leave Expiration Letter (SEPTA-Walker 000010)

19. Walker's SEPTA Work Record (including disciplinary, sick leave, and FMLA history) (SEPTA-Walker 000102-558)

20. S. Wasserkrug Email (SEPTA-Walker 000579-82)

21. Supervisor Training Reports (SEPTA-001059-1104)

## VI. MOST CURRENT DEMAND AND OFFER IN SETTLEMENT

Plaintiff's latest settlement demand was $100,000.00, but Plaintiff's counsel has not provided any legitimate basis for this demand. SEPTA has not made an offer to resolve this matter and awaits a decision on its pending motion for summary judgment. There has not been a settlement conference in this matter.

## VII. ANTICIPATED LENGTH FOR TRIAL

SEPTA anticipates that three (3) to four (4) days will be required for trial.

Respectfully Submitted,

Dated: April 9, 2024     MONTGOMERY MCCRACKEN WALKER & RHOADS LLP

By:    */s/ William K. Kennedy*
William K. Kennedy (Atty. I.D. 86571)
Elizabeth Catalano (Atty. I.D. 327253)
Montgomery McCracken Walker & Rhoads LLP
1735 Market Street, 19th Floor
Philadelphia, PA 19103
Tel: 215.772.1500
Email:    wkennedy@mmwr.com
           ecatalano@mmwr.com

# CERTIFICATE OF SERVICE

I, William K. Kennedy, hereby certify that on the 9th day of April 2024, a true and correct copy of the foregoing DEFENDANT SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY'S PRETRIAL MEMORANDUM was filed and served to all counsel of record electronically via the Court's Electronic Filing System ("ECF") and is available for viewing and downloading from the Court's ECF system.

April 9, 2024

By:    /s/ *William K. Kennedy*
         William K. Kennedy