**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ISAIAH WALKER, | : | |
| | : | No. 22-cv-3154-JMY |
| vs. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY. | : | |

**MEMORANDUM**

**Younge, J.**                                                                     **June 20, 2024**

Currently before the Court is a motion for summary judgment filed by Defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"). (Motion for Summary Judgment "MSJ", ECF No. 27.) The Court finds this matter appropriate for disposition without oral argument. See Fed. R. Civ. P. 78, L.R. 7.1(f). For the reasons set forth below, Defendants' Motion will be granted.

**I.      INTRODUCTION**:

Defendant SEPTA is the nation's sixth largest public transportation system, serving southeastern Pennsylvania counties of Philadelphia, Montgomery, Bucks, Chester, and Delaware, and employing over 9,000 people. (Statement of Undisputed Material Facts "SEPTA's SMF" ¶ 1, ECF No. 27-4.) Plaintiff began working for SEPTA as a bus driver on March 26, 2018. (Walker's Response to Defendant's Statement of Undisputed Facts "Pls Resp SMF" ¶ 21, ECF No. 28-2.) On June 29, 2021, SEPTA terminated its employment relationship with Plaintiff. As will be explained in more detail below, SEPTA claims that it fired Plaintiff because he violated its attendance policy by failing to report to work for his scheduled shifts. As will also be explained in more detail below, SEPTA's attendance policy is governed by the

Collective Bargaining Agreement (CBA) entered into with The Transportation Workers Union 234.  (See hereinbelow § II B.4 Factual and Procedural History.)

During the course of his employment with SEPTA, Plaintiff had a problem with attendance which Plaintiff alleges was caused by Sickle Cell Anemia – a condition which he has suffered from his entire life.  (Pls Resp. SMF ¶ 23.)  The Parties dispute whether Plaintiff actually or accurately informed SEPTA that his attendance problem was caused by his medical condition.  (Pls Resp SMF ¶ 22-27.)  SEPTA produced employment records during discovery in which Plaintiff's absenteeism was attributed primarily to self-reported problems in finding childcare rather than Sickle Cell Anemia.  (Walker Point History Report, SJM, Exhibit L, ECF No. 27-16.)

Plaintiff contests the validity of SEPTA's record keeping and asserted that he called out because of complications related to Sickle Cell Anemia.  (Pls Resp SMF ¶¶ 23, 28, 32, 46.)  However, Plaintiff admitted during his deposition that he actively hid the extent of his medical condition from SEPTA prior to and during their employment relationship.  (Walker Deposition pages 22-23, MSJ, Exhibit I, ECF No. 27-13.)  For example, prior to Plaintiff beginning employment with SEPTA, SEPTA conducted a Medical Fitness Determination, which is a standard practice for new Bus Operators.  (Pls Resp SMF ¶ 22.)  In this Medical Fitness Determination, Plaintiff was asked about any ailments he may have and any limitations, to which Plaintiff responded, in part, "I have Sickle Cell Anemia since birth and I've had a retinal detachment, no limitations…"  (Pls Resp SMF ¶ 23.)  Plaintiff testified at his deposition that he did not tell the examining doctor that he might have issues reporting to work based on Sickle Cell Anemia.  (Pls Resp SMF ¶ 24.)

Plaintiff was also asked in his STOP-BANG Questionnaire, another medical

questionnaire asked of new bus operators, if he often feels tired, fatigued, or sleepy during daytime to which he replied, "NO". (Pls Resp SMF ¶ 25.) Plaintiff testified at deposition that, "I flew through these questions" and "part of it was for me not to have any … to put anything on it that would prevent me from getting the job at the time." (Pls Resp SMF ¶ 27.) Plaintiff further admitted that if he was honest at the time, he would have answered "Yes", that he feels tired during the day and also "Yes" that he snores. (*Id.*) Plaintiff also admitted that there were times when he would call SEPTA to report that he was not going to come to work, and he would claim that he could not find someone to watch his child because he did not want to admit that he was exhausted, tired or in pain and was too sick to work from complications caused by Sickle Cell Anemia. (Walker Deposition pages 22-23.)

In this litigation, the Parties dispute whether Plaintiff requested an accommodation and whether SEPTA was on notice of the need to engage in the interactive process to determine if Plaintiff required an accommodation. Plaintiff also brings claims for inference and retaliation under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, 29 CFR 825.

## II.   FACTUAL AND PROCEDURAL BACKGROUND:

### A.   Attendance Policy Covering TWU 234 Employees:

SEPTA argues that its attendance system is governed by the Attendance Policy and Attendance Point System contained in its collective bargaining agreement with TWU 234 (the "CBA").[1] (SEPTA's SMF ¶ 11.) In Appendix I of the CBA, SEPTA and the TWU 234 agreed to incorporate a point system to "provide[] employees the opportunity to improve their records through steady attendance and attempt[] to provide an objective basis for the imposition of discipline for non-attendance." (*Id.* ¶ 12.) Under the Attendance Points System, points are to be

---

[1] Plaintiff contests whether SEPTA's attendance requirements are controlled by the terms of the CBA which includes the Attendance Policy.

assessed against employees for various incidents of non-attendance as proscribed by the

Agreement, which vary in number of points depending on the severity and type of non-

attendance.  (*Id.* ¶ 13.)

      An employee who accumulates twenty or more points is subject to progressive discipline

each time his point total reaches twenty.  (*Id.* ¶ 14.)  The first time an employee reaches twenty

points, he receives a one-day suspension, and his point total is reduced by ten points.  (*Id.* ¶ 15.)

The second time an employee reaches twenty points, he receives a five-day suspension, and his

point total is again reduced by ten points.  (*Id.* ¶ 16.)  On the third instance, the employee is

discharged.  (*Id.* ¶ 17.)  However, employees are often given a "last chance", where the

employee is asked to sign a Work Resumption Agreement, his point total is again reduced by ten

points, and only if the Attendance Points reach twenty once more is he discharged.  (*Id.* ¶ 17.)  In

this circumstance, an employee must obtain twenty points in the attendance policy four separate

times to be discharged.  (*Id.* ¶ 17.)

      In addition to the point reduction following discipline, for every month in which an

employee receives no points, the employee's point total will be reduced by two points.  (*Id.* ¶

18.)  Beginning with the sixth consecutive month without accruing points, and for each

month thereafter, the employee's point total will be reduced by three points.  (*Id.* ¶ 19.)

SEPTA's Attendance Point System is a no-fault system, meaning that once an employee gets to

twenty points they are disciplined, regardless of the reason for the attendance infraction.  (*Id.* ¶

20.)

    **B. 1.   Plaintiff's Accumulation of Attendance Disciplinary Points**:

      As an employee within SEPTA's Bargaining Unit, Plaintiff was represented by TWU 234

and, therefore, was subject to the Attendance Policy in the CBA.  (Pls Resp SMF ¶ 29.)  SEPTA

employees hired prior to November 15, 2021 – like Plaintiff – are entitled to a total of three emergency at home days requiring no validation within any consecutive twelve-month period which do not incur Attendance Points.  (SEPTA's SMF ¶ 37.)  SEPTA employees may also call out sick; however, the use of sick days will cause an employee to incur points.  (*Id.* ¶ 30.)  After an employee exhausts his emergency at home days, all subsequent call-outs are assessed points and are considered in establishing call-out patterns.  (Pls Rep SMF ¶ 38.)

SEPTA alleges that it keeps records of its employee's point history reports.  (*Id.*)  Plaintiff disputes the veracity of SEPTA's record keeping system; however, point history reports produced during discovery illustrate these records contain a brief note summarizing what Plaintiff told the SEPTA dispatcher each time there was an attendance issue as well as other recordkeeping information like the date, point code, and any assessed points.  (*Id.* ¶ 31; Walker Point History Report.)    SEPTA employment records indicate that between October 25, 2018 and June 7, 2021, Plaintiff accumulated approximately 76 points.  (Pls Resp SMF ¶ 45.)

Plaintiff claims that SEPTA's records inaccurately reflect his point history and the reason he provided for calling out from work.  (Pls Resp SMF ¶¶ 23, 28, 32, 46.)  However, records produced by SEPTA indicate that at least 88% of Plaintiff's call-outs during his employment were unrelated to Sickle Cell Anemia.  (SEPTA's SMF ¶ 34.)  According to SEPTA's records, Plaintiff only called out for Sickle Cell Anemia related health problems on four occasions between 2018 and 2021, and received two points for each of these call outs.  (SEPTA's SMF ¶ 34-35.)  Records produced during discovery by SEPTA show that Plaintiff called out on twenty-three separate occasions for childcare related problems between 2018 and 2021.  (*Id.* ¶ 32.)  SEPTA also alleges that Plaintiff exhausted all of his emergency at home days between 2018 to 2020 for which [SEPTA recorded] as reported "no babysitter" or "childcare."  (SEPTA's SMF ¶

39.)  Therefore, under SEPTA's version of events, Plaintiff's call-outs for Sickle Cell Anemia accounted for only eight of the minimum fifty Attendance Points necessary for discharge.  (*Id.*) One of these point assessments was reversed on April 19, 2021, meaning only six points were from call outs attributed to Sickle Cell Anemia related health problems. (*Id.*)

### B. 2.   Plaintiff Was Repeatedly Disciplined Under the Attendance Point System:

Plaintiff was unable to keep his attendance points below the twenty-point disciplinary threshold.  (Pls Resp. SMF ¶ 40.)  Plaintiff hit twenty-two points and received a one-day suspension on July 31, 2019.  (*Id.* ¶ 42.)  Plaintiff hit twenty-five points and received a five-day suspension on October 1, 2019.  (*Id.*)  Plaintiff again hit twenty-two points and was discharged with dignity on January 16, 2020. (*Id.*)  Consequently, Plaintiff then signed his Work Resumption Agreement on February 18, 2020.  (*Id.*)  Pursuant to the Work Resumption Agreement, the next time Plaintiff reached twenty-points or more would result in termination. (*Id.*)

### B. 3.   Plaintiff Called Out on June 7, 2021 for "No babysitter," Accruing Twenty Points and Requiring Termination:

On June 7, 2021, Plaintiff again called out for an emergency at home.  (Pls Resp SMF ¶ 46.)  SEPTA records indicate that Plaintiff reported to the SEPTA dispatcher, "NO_BABYSITTER."  (*Id.*)  Plaintiff testified that he was in the hospital beginning on June 7, 2021, but he agreed that, when he called out, he informed the dispatcher that he did not have a babysitter.  (Pls Resp. SMF ¶ 48.)  Plaintiff was assessed two points because he no longer had any emergency at home leave available.  (SEPTA's SMF ¶ 46.)  This took Plaintiff from eighteen to twenty points, resulting in a violation of his Work Resumption Agreement and

6

termination of his employment.[2]  (*Id.*)  Later that day – after he reported that he did not have

childcare and called out – Plaintiff initiated the FMLA process by requesting leave.  Although

Plaintiff initiated an FMLA request on June 7, 2021, Plaintiff had already accrued twenty points

for the June 7th call out.  (Def SMF ¶ 63.)  The next day, June 8, 2021, Plaintiff called out sick

because he had a Sickle Cell Anemia flareup.  (Pls. Resp. SMF ¶ 47.)

**B. 4.   SEPTA Holds A Formal Hearing and Terminates Plaintiff in 2021**:

On June 29, 2021, SEPTA held a Formal Hearing regarding Plaintiff's poor attendance

record.  (Pls Resp SMF ¶ 52.)  During this hearing, the Hearing Officer, Shwana Rogers,

considered the evidence presented including Plaintiff's Points History Report, Attendance

Deviation Notices, FMLA Approval, Jefferson Health Documentation, Work Resumption (Last

Chance) Agreement, and other applicable records.  (Pls Resp SMF ¶ 53.)  Plaintiff was present

for the hearing and had union representation.  (*Id.*)  Upon hearing SEPTA's case and the Union's

response, the Hearing Officer upheld the termination and wrote:

> The Hearing Officer has reviewed the attendance infractions of the employee and
> determined the current point total to be accurate at 20 points. The Authority is
> sympathetic to the employee's medical condition however, the attendance policy is
> a no-fault system and allows the employee the opportunity to reduce his points each
> 30 days.  Mr. Walker failed to reduce his attendance points; therefore, the next step
> of discipline is Discharge.

(Pls Resp SMF ¶ 54.)  Plaintiff contends that SEPTA terminated its employment relationship

with him because he had Sickle Cell Anemia.  (Pls. Resp. SMF ¶ 57.)  However, SEPTA's

---

[2]  Plaintiff argues that his June 7, 2021 absences only brought him to 18 points.  (Walker
Deposition page 110.)  However, Plaintiff's own unsupported, self-serving statements that amount to
mere speculation with nothing more do not create a triable issue of material fact for a jury to
resolve.  *Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x. 585, 586 (3d Cir. 2002) (affirming district
court's rejection of claims based solely on the plaintiff's own testimony, stating "a plaintiff cannot rely on
unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.")
(citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)); *see also Ridgewood Bd. of Educ. v. N.E.*, 172
F.3d 238, 252 (3d Cir. 1999) (holding same).

alleged justification for terminating Plaintiff's employment was his violation of the Work Resumption Agreement via his substandard attendance.  (SEPTA's SMF ¶ 57.)

On or about October 9, 2021, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC).  (Pls. Resp. SMF ¶ 69.)  On or about May 13, 2022, the EEOC issued a Dismissal and Notice of Suit Rights ("Right to Sue Notice").  (*Id.* ¶ 72.)

## II.    LEGAL STANDARD:

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case."  *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a

genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and

determine the truth of the matter, but rather to determine whether there is a genuine issue for

trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d

Cir. 2007). In doing so, the court must construe the facts and inferences in the light most

favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*,

258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S.

at 252.

## III.    DISCUSSION:

SEPTA is entitled to summary judgment on Plaintiff's claims under the Americans with

Disabilities Act ("ADA"), as Amended, 42 U.S.C. § 12101, *et seq*., and the Family and Medical

Leave ("FMLA") Act, 29 U.S.C. § 2615(a)(1). The claims asserted by Plaintiff fail primarily

because he is unable to establish that he requested an accommodation prior to accumulating the

number of points to require termination under the point system established by the CBA. Claims

asserted by Plaintiff based on a theory of wrongful termination and retaliation fail because

SEPTA established that it fired Plaintiff for absenteeism in violation of the attendance provisions

in the CBA. Therefore, SEPTA came forward with a legitimate non-discriminatory business-

related justification for terminating its employment relationship with the Plaintiff.

Plaintiff is unable to establish that SEPTA's legitimate non-discriminatory business-

justification for termination was a pretextual justification for engaging in discrimination.

Contrary to allegations asserted by Plaintiff, there is no evidence that Plaintiff's termination was based on his alleged disability, FMLA leave, or leave requests. Plaintiff has produced no evidence to establish a *prima facie* case or to contradict SEPTA's legitimate, non-discriminatory reasons for its termination of Plaintiff.

> ### A. Plaintiff's Claim for Failure to Accommodate and Engage in the Interactive Process brought under the Americans with Disability Act (ADA):

To prevail on a claim for failure to accommodate, an employee must show that he or she requested an accommodation. *Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 388 (E.D. Pa. Sept. 29, 2021). An employee's request for an accommodation need not be in writing, invoke any "magic words," or otherwise conform to any formalities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999); *Boice v. SETPA,* 2007 U.S. Dist. LEXIS 74566, *43 (E.D. Pa. Oct 5, 2007). But the request must at least "make clear that the employee wants assistance for . . . her disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). Put another way, "the employer must know of both the disability and the employee's desire for an accommodation for that disability." *Id.*

When an employee requests an accommodation, the ADA does not mandate that an employer excuse an employee's previous misconduct, even if it was precipitated by his or her disability. *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012); *see also* EEOC's Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA 35-36 (2002) ("[S]ince reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability."). *Lassiter v. Children's Hosp. of Philadelphia*, 131 F. Supp. 3d 331 (E.D. Pa. Sept. 21, 2015); *Allen v. Lackawanna Cnty.*, 2020 U.S. Dist. LEXIS 135176 (M.D. Pa. July 28, 2020). Although there is no Third Circuit precedent directly on point, this premise is well-settled in other courts. *Davila*

*v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001); *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001); *Hill v. Kansas City Area Trans. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999); *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir. 1999); *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998); *accord Willis v. Norristown Area Sch. Dist.*, 2 F.Supp. 3d 597 (E.D. Pa. 2014); *Heard v. St. Luke's Hosp.*, 2009 U.S. Dist. LEXIS 89124 (E.D. Pa. Sept. 28, 2009).

Plaintiff's deposition testimony clearly establishes that Plaintiff made a retroactive request for an accommodation to excuse past misconduct.  According to Plaintiff's own testimony, he made a request for an accommodation on or after June 7, 2021 – prior to his official final termination hearing – but after he had accrued sufficient points under the terms of the CBA to warrant his dismissal.   At deposition, Plaintiff testified as follows:

> Q.  Okay. Did you ever ask Mr. Duckett or the other directors for an accommodation related to your medical condition?
>
> A.  Beforehand, no.
>
> Q.  What do you mean before?  Before what?
>
> A.  Before – I asked them for one like around the time when I got out of the hospital. When I got out of the hospital and I showed them the paperwork, you know, and I was telling them, you know, listen, this is why I was in there…
>
> Q.  Was that after you were terminated, your job was terminated?
>
> A.  No, no. That was before that.
>
> Q.  Before that?
>
> A.  Yes.

(Walker Deposition page 52-24.)

> A.  [S]o when I did come back to work and I was talking to him – this was before our, I guess you would – our informal hearing…

Q.  Do you still have the discharge papers?

A.  Yes, I still have the discharge papers, yes?

Q.  What were the dates that you were in the hospital?  What were the dates?

A.  The dates were the 7th of June up until, I believe, the 11th or 12th.

Q.  2021?

A.  Yes.

(Walker Deposition page 54.)

In response to SEPTA's motion for summary judgment, Plaintiff provided a declaration in an attempt to rehabilitate his damaging deposition testimony.  (Walker Declaration; ECF No. 28-3.)  In his post-deposition declaration, Plaintiff avers that he requested an accommodation on four separate occasions while he was employed by SEPTA.  Plaintiff avers as follows:

> The first was a conversation that happened during the last chance hearing I had on February 11, 2020.  The second instance was related to when I went out on COVID leave because of my disability and after I provided medical documentation to SEPTA on June 29, 2020.  The third instance was when I provided a medical excuse letter from my doctor to SEPTA about my disability and how it made me a high risk to contract COVID-19 which excused me from work, on or around December 24, 2020.  The fourth and final instance was a conversation I had with my supervisors about my disability . . . after I was hospitalized and needed flexibility as help on or around June 9, 2021.

(Walker Declaration ¶ 18.)

Plaintiff then attempts to bolster statements made in his declaration with reference to specific instances in his deposition testimony which he claims support his numerous requests for an accommodation.  (Plaintiff's Response to MSJ, ECF No. 30, (Walker Deposition pages 47-50, 60, 173, 174).)  Plaintiff argues that SEPTA was placed on constructive notice of his desire for a reasonable accommodation because supervisors and management were aware of his problem of reporting to work which he alleges was related to complications associated with Sickle Cell

Anemia.  (Plaintiff's Response to Summary Judgment page 14, ECF No. 28.)  Plaintiff argues

that SEPTA failed to make a good faith attempt to engage in the interactive process.  (*Id.* pages

12-15.)

 A review of the proffered deposition testimony simply does not support Plaintiff's

contention that he requested an accommodation prior to accumulating the necessary points to

warrant dismissal on June 7, 2021.  The select portions of deposition testimony cited by Plaintiff

do not establish that he requested an accommodation.  The deposition testimony cited by

Plaintiff in response to SEPTA's motion for summary judgment simply establishes that Plaintiff

told supervisors and management at SEPTA that he was having trouble reporting to work

because of complications related to his Sickle Cell Anemia.  The fact that Plaintiff made

supervisors and management aware of his medical condition is insufficient to establish that he

requested an accommodation.  *Taylor*, 184 F.3d at 313 (noting that "[e]mployers cannot assume

employees are disabled and need accommodations); *Coneen v. MBNA America Bank, N.A.*, 334

F.3d 318, 332 (3d. Cir. 2003) (noting that no formal request for accommodation need be made to

trigger the interactive process, but the employer must be made aware of the employee's disability

and the desire for an accommodation); *Deily v. Waste Mgmt.*, 2001 U.S. Dist. LEXIS 8555, *12

("[T]he employer has no duty to participate in the interactive process unless it receives a request

for accommodation."); *Jones v. UPS*, 214 F.3d 402, 408 (3d Cir. 2000) (Employer had no

obligation to engage in interactive process because plaintiff never requested an accommodation);

*McLean v. Abington Mem'l Hosp.*, No. 15-671, 2015 U.S. Dist. LEXIS 122495, *23 (E.D. Pa.

2015).

 Plaintiff's constructive notice argument is equally faulty because he actively hid the

extent of his medical condition and how it negatively affected his ability to perform his job as a

bus drive for SEPTA.  *See Generally Lei Ke v. Drexel Univ.*, No. 11-cv-6708, 2013 U.S. Dist.

LEXIS 143686 (E.D. Pa. Oct. 4, 2013) (Motion to file an amended complaint denied where a

partially blind medical student did not request a vison-related accommodation because he was

"afraid of jeopardizing his career.").  The Court is not persuaded by Plaintiff's claim that SEPTA

failed to engage in the interactive process when Plaintiff did not disclose the extent of his

medical condition.

   The Court will apply the sham affidavit doctrine and disregard statements that contradict

Plaintiff's sworn deposition testimony contained in the declaration that Plaintiff offers in

opposition to SEPTA's motion for summary judgment.  Under the sham affidavit doctrine, "a

court will disregard an affidavit that is inconsistent with an affiant's prior deposition testimony . .

. unless the party relying on the affidavit in opposition to the motion can present a legitimate

reason for the discrepancies between the deposition and the affidavit."  *Smith v. Johnson and*

*Johnson*, 593 F.3d 280, 285 n.3 (3d Cir. 2010); see also *Cleveland v. Policy Mgmt. Sys. Corp.*,

526 U.S. 795, 806-07 (1999) ("[A] party cannot create a genuine issue of fact sufficient to

survive summary judgment simply by contradicting his or her own previous sworn statement (by,

say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without

explaining the contradiction or attempting to resolve the disparity."); *Jiminez v. All Am.*

*Rathskeller, Inc.*, 503 F.3d 247, 251 (3d Cir. 2007) ("[A] party may not create a material issue of

fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony

without demonstrating a plausible explanation for the conflict.").

   "Thus, under the sham affidavit doctrine, to exclude the affidavit, two requirements must

be met: (1) the later statement contradicts the witness's deposition testimony, and (2) the

discrepancy between the two statements is neither supported by record evidence nor otherwise

satisfactorily explained." *Meigs v. Care Providers Ins. Servs.*, LLC, 2023 U.S. Dist. LEXIS

7141, 2023 WL 187494, at *8 (E.D. Pa. Jan. 13, 2023).  If a court decides that statements in an

affidavit directly contradict prior deposition testimony, the Third Circuit recognizes two methods

that may be used to establish that a contradictory affidavit is not a sham: (1) independent

evidence in the record that may bolster the questionable affidavit; or (2) a satisfactory

explanation offered by the affiant for the discrepancy between the prior deposition and the

affidavit.  *Jiminez*, 503 F.3d at 254.

      Plaintiff's declaration is appropriately precluded based on the legal standard set forth

above for the sham affidavit doctrine.  The declaration offered by the Plaintiff clearly contradicts

his prior deposition testimony to the extent it seeks to establish that he requested an

accommodation prior to June 7, 2021 – when he accrued the number of points to require

termination under the CBA.  Plaintiff fails to explain this blatant contradiction in his account of

what occurred – a contradiction on a factual detail that is crucial to Plaintiff's ability to establish

a claim based on a theory of failure-to-accommodate.[3]  The factual record is also devoid of any

evidence to support allegations made by Plaintiff in his declaration.  There is nothing to show

that Plaintiff followed any of the policies or procedures established by SEPTA for requesting an

accommodation or that he spoke with anyone within SEPTA's human resource department about

his purported request for an accommodation.  To the contrary, Plaintiff admits that he actively

hid the extent to which his medical condition impeded his ability to report to work for his

regularly scheduled shifts.  Plaintiff's attempt to hide the extent of his condition contradicts any

assertion that he requested or attempted to obtain an accommodation – the two statements

juxtaposed do not work in conjunction.

---

[3] Plaintiff should have been on notice of the fact that the timing of his purported request for an accommodation would be at issue in his lawsuit brought on a theory of failure-to-accommodate.

Plaintiff's ability to prevail on a theory of failure-to-accommodate is also problematic because the Court has serious questions about whether SEPTA could have realistically provided Plaintiff with a flexible work schedule.  SEPTA is the nation's sixth largest public transportation system, employing over 9,000 workers in the Philadelphia area.  SEPTA buses must run on schedule.  To achieve SEPTA's goal of providing dependable public transportation on a regular schedule, SEPTA avers that it expects bus drivers to be punctual and arrive on time for scheduled shifts.  Under the circumstances, Plaintiff's proposed accommodation of a flexible work schedule would appear unreasonable.  *Oden v. SEPTA*, 137 F. Supp. 3d 778, 788 (E.D. Pa. Oct 5, 2015) (The Court stated, "[i]t is difficult to imagine punctuality is not required by most employers when dealing with the public," but declining to find as a matter of law that punctuality was an essential function of a job as a cashier with SEPTA and granting summary judgment for SEPTA on other grounds.).

Plaintiff's claim based on a theory of failure-to-accommodate fails because he requested a retroactive accommodation.  The Court will apply the sham affidavit doctrine and reject his declaration.  The Court will enter summary judgment on Plaintiff's failure-to-accommodate claim.

**B.      The Court Will Dismiss Plaintiff's Claim for Wrongful Termination Brought under the ADA:**

Plaintiff's claim for wrongful termination fails because SEPTA came forward with a legitimate non-discriminatory business justification for terminating its employment relationship with Plaintiff.  SEPTA justified its decision to terminate Plaintiff based on repeated violation of its attendance policy as established and set forth in the CBA.

Plaintiff's claim for wrongful termination under the ADA is subject to the familiar *McDonnell Douglas* burden shifting framework, which first requires a plaintiff to make a *prima*

*facie* case by showing that: (i) he is a member of a protected class; (ii) he met or exceeded

legitimate performance expectations; (iii) defendant took an adverse employment action against

him (by failing to promote him or firing him); and (iv) that the circumstances give rise to an

inference of unlawful discrimination.  *Jones v. School Distr. of Philadelphia,* 198 F.3d 403, 410

(3rd Cir. 1999).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant

to articulate a legitimate, non-discriminatory reason for the act complained of.  If the defendant

carries this burden, the plaintiff then has an opportunity to show that the legitimate reasons

offered by the defendant were pretext for discrimination.  *See Makky v. Chertoff*, 541 F.3d 205,

214 (3rd Cir. 2008).  An inference of discrimination cannot arise simply from an employee's

subjective belief that his or her disability somehow influenced the challenged employment

action.  *Wilson v. Blockbuster, Inc.,* 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008); *Tillman v.*

*Redevelopment Auth.,* No. 12-1505, 2013 U.S. Dist. LEXIS 147234, at *22 (E.D. Pa. Oct. 11,

2013) ("A plaintiff's own unsubstantiated, subjective beliefs or suspicions alone would not

suffice to persuade a rational trier of fact that age [or disability] was a factor in the termination

decision.").

SEPTA alleges that it terminated its employment relationship with Plaintiff because

Plaintiff failed to adhere to its strict attendance policy as established under the CBA.  SEPTA's

non-discriminatory business justification for terminating its employment relationship with

Plaintiff would appear legitimate to the Court.  SEPTA's enforcement of is attendance policy as

set forth in the CBA appears reasonable and legitimate to the Court.  *See generally Gardener v.*

*SEPTA*, 410 F. Supp. 3d 723 (October 17, 2019) ("It is well-settled across the Circuit Courts that

a measure that would violate a seniority system established in a collective bargaining agreement

is not a "reasonable accommodation," and thus is not required by the ADA.").

Plaintiff argues that SEPTA failed to offer an accommodation, but as previously discussed by the Court, that argument fails.  Putting aside Plaintiff's failure-to-accommodate claim, he offers nothing to challenge SEPTA's legitimate non-discriminatory business justification for terminating the employment relationship.  Plaintiff failed to come forward with any credible evidence to establish that SEPTA's proffered justification for terminating his employment was a pretextual excuse for discrimination.[4]  Therefore, summary judgment is appropriately granted as to his claim of wrongful termination.

**C.    The Court Will Dismiss Plaintiff's Claim for Interference and Retaliation under the Family Medical Leave Act (FMLA):**

Congress passed the FMLA in 1993 in an attempt "to balance the demands of the workplace with the needs of families."  29 U.S.C. § 2601(b)(1).  Accordingly, the FMLA "entitle[s] employees to take reasonable leave for medical reasons," 29 U.S.C. § 2601(b)(2), but employees must do so "in a manner that accommodates the legitimate interests of employers."  29 U.S.C. § 2601(b)(3).  Eligible employees are entitled to:

> 12 workweeks of leave during any twelve-month period . . .  In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition . . .  Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).

---

[4]  There is nothing to suggest that SEPTA's point calculation is erroneous other than Plaintiff's own unsupported testimony which the Court previously addressed and dispensed with in footnote 2 hereinabove.  However, even if SEPTA was somehow mistaken, this honest mistake would not create an employment discrimination claim. The plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1109 (3d Cir. Nov. 24, 1997); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 471 (3d Cir. 2005) ("[T]he mere fact that a different, perhaps better, method of evaluation could have been used is not evidence of pretext."); *Ezold v. Wolf, Block Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) (noting that the court does not act as "member [] of an employer's promotion board or committee").

To state a claim for FMLA interference, a plaintiff must allege that:

(1) [he or she] was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of … [his or] her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which . . . she was entitled under the FMLA."

*Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. Jan 30, 2017).

Under the fourth prong of the five-part test cited above, employees cannot invoke rights under the FMLA if they fail to provide adequate notice of their need for leave.  29 U.S.C. § 2612 (e).  To invoke rights under the FMLA, employees must provide adequate notice to their employer about their need to take leave.  29 U.S.C. § 2612(e)(2).  In doing so, the employee "need not expressly assert rights under the FMLA or even mention the FMLA."  29 C.F.R. § 825.303(b).

When the need for leave is unforeseeable, employees are obligated to notify their employer "as soon as practicable," 29 C.F.R. § 825.303(a), and "provide sufficient information for an employer to reasonably determine whether the FMLA may apply."  29 C.F.R. § 825.303(b).  When the leave is unforeseeable, the employee's obligation is to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."  *Id.*  As we have previously noted, this is not a formalistic or stringent standard. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (stating that the statutory and regulatory text suggests a "liberal construction" be given to FMLA's notice requirement); see also *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 474 (8th Cir. 2007) ("The regulations already make it very easy for [an employee] to give notice of her intent to take leave."); *Burnett v. LFW Inc.*, 472 F.3d 471, 478 (7th Cir. 2006) ("The notice requirements of the FMLA are not onerous.").

Plaintiff made multiple requests to take leave under the FMLA during the roughly three-year period that he was employed by SEPTA.  Plaintiff admits that SEPTA granted all of the requests for leave that he made under the FMLA.  (Walker Deposition pages 166-167.)  When Plaintiff called out on June 7, 2021, SEPTA calculated Plaintiff's point score at twenty (20) points which required termination under the terms of the CBA and SEPTA's internal policy/procedure.  (Pls SMF ¶¶ 46, 48.)  Plaintiff's twenty (20) point assessment also violated the terms of the Work Resumption Agreement he signed at the conclusion of his last chance meeting when he resumed work after being fired in January of 2020 because of his attendance problem.  Plaintiff testified that he called SEPTA around 2:00 or 3:00 in the morning on June 7, 2021, to report that he would not be coming into work that day because he could not find a babysitter for his child.  (Walker Deposition pages 106-107.)  SEPTA records indicate that later that day – around 1:30 in the afternoon – Plaintiff initiated the FMLA process.  (Walker FMLA Records, MSJ, Exhibit O, ECF No. 27-19.)

Plaintiff accrued twenty (20) points thereby violating the attendance policy prior requesting FMLA leave in the afternoon on June 7, 2021.  The fact that Plaintiff reported that he would be absent because he could not find childcare was insufficient to provide SEPTA with notice that because of complications related to Sickle Cell Anemia he intended to take FMLA leave.  Simply "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the [FMLA]." *Gardiner v. City of Philadelphia*, 809 F. App'x 92, 95 (3d Cir. April 23, 2020); 29 C.F.R. 825.303(b).  The Court would also like to highlight the speculative nature of any argument the Plaintiff might make to the effect that complications related to his medical condition were an unforeseen surprise.

Plaintiff suffers from a chronic medical condition that previously inhibited his ability to meet SEPTA's strict attendance guidelines.

Plaintiff's FMLA retaliation claim fails for all of the same reasons previously discussed by the Court when it addressed Plaintiff's FMLA interference claim.  Plaintiff was granted all leave that he requested under the FMLA.  Regarding his absence on June 7, 2021, Plaintiff failed to invoke his rights under the FMLA by providing SEPTA with notice that he intended to take leave under the FMLA.  To succeed on an FMLA retaliation claim, a plaintiff must show that (1) he invoked his rights to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights."  *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014); *Erdman v. Nationwide Ins., Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

## IV.    CONCLUSION:

For these reasons, summary judgment will be granted in favor of SEPTA and against Plaintiff on his employment discrimination and FLMA claims.  The Court will enter an appropriate order.

**BY THE COURT**:

    /s/ John Milton Younge
Judge John Milton Younge